IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Plaintiff,

     -v-                         24-CV-

$61,183.58 UNITED STATES CURRENCY,

        Defendant.

_____

## **VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and Mary Clare Kane, Assistant United States Attorney, of counsel, for its verified complaint herein alleges as follows:

## **NATURE OF ACTION**

1.    This is an action *in rem* pursuant to Title 18, United States Code, Sections 981(a)(l)(C) and 984 for the forfeiture of the sum of $61,183.58 in United States currency (hereinafter "defendant currency"), seized from M&T Bank account number 9885311390 (hereinafter "M&T 1390") held in the name of Darrell Lowery (hereinafter "Lowery") on or about May 3, 2024, pursuant to a federal seizure warrant.

## **JURISDICTION AND VENUE**

2.    This Court has subject matter jurisdiction of this action commenced by the United States pursuant to Title 28, United States Code, Section 1345 and over an action for forfeiture pursuant to the provisions of Title 28, United States Code, Section 1355(a). This Court has *in rem* jurisdiction pursuant to 28 U.S.C. §§ 1355(b) and 1355(d) because M&T

Bank is headquartered in the Western District of New York and the defendant currency was located within an M&T Bank Account.   Venue is properly premised in the Western District of New York pursuant to 28 U.S.C. § 1395.

## FACTUAL BACKGROUND

3.      Beginning in or about May 2021, Lowery obtained one (1) Restaurant Revitalization Fund ("RRF") loan.  To obtain the loan proceeds, Lowery submitted  false and misleading information on a RRF loan application, and Lowery submitted false supporting documents to the Small Business Administration ("SBA"). Reliance on this false information caused the SBA to grant an RRF loan to Lowery. The SBA sent the loan proceeds by electronic transmission or wire to M&T 1390 controlled by Lowery.

4.      Based upon Internal Revenue Service-Criminal Investigation's ("IRS-CI") involvement in the investigation, Lowery did not own or operate a restaurant when he applied for the RRF loan, which is a requirement and the reasoning for receiving a RRF loan. Further, there is no information in the Pennsylvania Department of State website for this business and nothing in Lexis Nexis Accurint about any businesses being owned by Lowery. As such, the statements on the RRF loan application are false.

## Overview of the Restaurant Revitalization Fund

5.      The American Rescue Plan Act established the RRF to provide funding to help restaurants and other eligible businesses keep their doors open after the COVID-19 pandemic began. This program, administered by the SBA, was intended to provide restaurants with funding equal to their pandemic-related revenue loss, up to $10 million per business and no more than $5 million per physical location. Recipients are not required to repay the funding if funds are used for eligible uses no later than March 11, 2023.

6.     The following types of entities suffering pandemic-related revenue losses are eligible for RRF loans:

- Restaurants;

- Food stands, food trucks, food carts;

- Caterers;

- Bars, saloons, lounges, taverns;

- Snack and nonalcoholic beverage bars;

- Bakeries (onsite sales to the public comprise at least 33% of gross receipts);

- Brewpubs, tasting rooms, taprooms (onsite sales to the public comprise at least 33% of gross receipts);

- Breweries or microbreweries (onsite sales to the public comprise at least 33% of gross receipts);

- Wineries and distilleries (onsite sales to the public comprise at least 33% of gross receipts);

- Inns (onsite sales of food and beverage to the public comprise at least 33% of gross receipts); and

- Licensed facilities or premises of a beverage alcohol producer where the public may taste, sample, or purchase products.

7.     RRF loan proceeds must be used by the business on certain permissible expenses, including:

- Business payroll costs (including sick leave);

- Payments on any business mortgage obligation;

- Business rent payments (this does not include prepayment of rent);

- Business debt service, both principal and interest (this does not include any prepayment of principal or interest);

- Business utility payments;

- Business maintenance expenses;

- Construction of outdoor seating;
- Business supplies (including protective equipment and cleaning materials);
- Business food and beverage expenses (including raw materials);
- Covered supplier costs; and
- Business operating expenses.

8.     To apply, applicants must submit an application, business tax returns and other tax documents, bank statements, financial statements and point of sale reports. Funding for the loans is calculated a variety of different ways depending upon when a restaurant began operating.

### Interstate Nexus

9.     The RRF is processed directly through the SBA, each application and/or request for forgiveness is completed using forms created by SBA.  The information and certifications contained on the SBA forms is electronically transmitted to SBA, the final authority on the granting of a loan and subsequent forgiveness.

10.     The SBA processed all RRF loan application and forgiveness related information provided by applicants and received from approved lenders through servers located in the state of Oregon. The processing of payments for these loans takes place *via* a primary server located in Sterling, Virginia.

11.     The DocuSign portion of the application, used to capture applicant initials on certifications and signature to finalize each application through the applicant's email address, was processed through one of three DocuSign server locations in Seattle, Washington, Dallas, Texas or Chicago, Illinois.

**<u>Darrell Lowery Applied for RRF Loan</u>**

12.     Shortly after opening M&T 1390, Lowery applied for a RRF loan in early May

2021.  Lowery obtained the following RRF loan:

| Applicant/ Business Name | Primary Contact | Loan Amount | Amount Disbursed | Approximate Date of Loan Application | Bank Account Receiving Loan Proceeds |
|---|---|---|---|---|---|
| LOWERY | LOWERY | $95,000.00 | $95,000.00 | May 9, 2021 | M&T 1390 |

13.     Additionally, as part of the RRF loan application, Lowery certified "that the

above information is true and correct, to the best of its knowledge, and that it has exercised

due diligence to obtain true and correct information…[and] certifies that the Applicant is a

small business according to the standards … the loan proceeds will be used for an eligible

purpose."  IRS-CI's investigation revealed no evidence of Lowery owning or having any

involvement in a restaurant business or food service industry business. Therefore, the

aforementioned certification by Lowery was false.

14.     After applying for the RRF loan, the following activity in M&T 1390

(Lowery's personal account) was noted:

a.      On or about May 13, 2021, LOWERY received a $95,000.00 ACH credit from
SBAD TREAS 310 MISC PAY, which represented an RRF loan from the
SBA.  The RRF loan funded ATM cash withdrawals at a M&T Bank branch
ATM in York, Pennsylvania totaling $2,000.00, including $500.00 on about
May 13, 2021; $500.00 on about May 14, 2021; $100.00 on about May 17,
2021; and $900.00 on about May 17, 2021, and three (3) ACH debits totaling
$99.16 to eBay on about May 17, 2021.

b.      On about May 17, 2021, M&T Bank froze M&T 1390 for unusual activity, at
that time M&T 1390 had a balance of $93,071.04.

c.      Beginning in about March 2023, M&T Bank started taking a $4.95 a monthly
service charge fee from M&T 1390. As of November 22, 2023, M&T 1390 had
a balance of $93,031.44.

d.      Between about December 11, 2023 and February 27, 2024, M&T 1390 was not
frozen, and Lowery withdrew $31,847.86 from the account for personal
expenses, consisting of 17 ACH debits totaling $491.86, mostly to eBay, 55

ATM cash withdrawals totaling $31,350.00, and two $3.00 non-M&T Bank ATM fees.

e.      None of the aforementioned debits or withdrawals between May 2021 and March 22, 2024 were for restaurant related expenses.

## Financial Analysis

### M&T 1390

15.      During the course of the investigation, IRS-CI reviewed records for M&T 1390.

16.      M&T 1390 was opened in the name of Darrell L. Lowery on or about April 23, 2021.  Lowery is the sole signer on M&T 1390.  Bank records indicate Lowery's home address is 103 East Market Street, York, Pennsylvania.

17.      M&T Bank is headquartered in the Western District of New York.

18.      M&T 1390 was opened with a $25.00 cash deposit. Other credits to the account include Cash App Person 2 Person ("P2P") ACH deposits for $142.20 on about May 4, 2021, $140.00 on about May 11, 2021, and a $140.00 Automated Teller Machine ("ATM") cash withdrawal at an M&T Bank branch ATM in York, Pennsylvania on about May 4, 2021. On about May 10, 2021, the account had a $0.01 ACH credit and $0.01 ACH debit from Square Inc, a point-of-sale payment processor, for what appears to be for account validation purposes.

19.      As set forth below, and based on records obtained from M&T Bank and the SBA, the RRF loan applications contained the following false representations:

| Applicant/ Business Name | Use of Proceeds: Utilities | Use of Proceeds: Payroll Costs | Business Age |
|---|---|---|---|
| LOWERY | $1.00 | $94,999.00 | Existing More than two years |

20.     M&T Bank again froze M&T 1390 in February of 2024, and as of March 22, 2024, M&T 1390 contained $61,183.58.

21.     Lowery spoke to a customer service representative at M&T Bank about M&T 1390.  Lowery was told that his account was frozen on or about May 17, 2021.  During this conversation, Lowery was told that his account was frozen due to activity regarding the SBA RRF loan.  Lowery was given a telephone number and point of contact to call at M&T Bank to discuss the freeze.  Lowery never called the contact.  M&T Bank also reached out to Lowery via telephone to attempt to discuss the SBA RRF loan.  Lowery never answered the phone or returned these calls.

22.     The bank records for Lowery show little to no financial transactions prior to the deposit of the RRF loan proceeds.

23.     M&T records and the investigation revealed that, upon receipt of the loan RRF proceeds, Lowery immediately started making ATM cash withdrawals of the loan proceeds from M&T 1390 as soon as the RRF loan funds arrived in the account. The loan proceeds were not used for any restaurant related or payroll related purposes.

24.     The RRF loan proceeds deposited to M&T 1390 in May 2021 were obtained through false and misleading statements on the RRF loan application.  The funds constitute SUA proceeds, to wit, the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344, and the funds are therefore subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(l)(C) and 984, as property which constitutes proceeds or was derived from proceeds traceable to any offense constituting a SUA ( wire fraud and/or bank fraud).

## SEIZURE OF DEFENDANT CURRENCY

25.     On May 3, 2024, the federal seizure warrant was executed and the defendant currency was seized on the basis that it constituted proceeds of SUA, to wit: wire fraud and bank fraud, and administrative forfeiture proceedings were initiated.

## INITIATION OF CIVIL JUDICIAL ACTION

26.     On or about June 14, 2024, Lowery filed a claim for the defendant currency with the IRS to halt the administrative forfeiture proceedings against the defendant currency and to commence civil judicial forfeiture proceedings.

## CONCLUSION AND REQUEST FOR RELIEF

27.     Based on all of the foregoing facts, the circumstances surrounding those facts, and the experience and training of the law enforcement officers involved in the investigation, there is reasonable belief that the defendant currency constitutes proceeds of specified unlawful activity, to wit: wire fraud in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344, and, therefore, the defendant currency is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(l)(C) and 984.

(This section left intentionally blank)

**WHEREFORE**, the United States of America respectfully requests:

(1) that an arrest warrant *in rem* be issued for the arrest of the defendant currency;

(2) that all persons having any interest therein be cited to appear herein and show cause why the forfeiture should not be decreed;

(3) that a judgment be entered declaring the defendant currency be condemned and forfeited to the United States of America for disposition in accordance with the law;

(4) that the costs of this suit be paid to and recovered by the United States of America; and

(5) that the Court grant such order and further relief as deemed just and proper.

DATED: September 27, 2024, at Buffalo, New York.

TRINI E. ROSS
United States Attorney
Western District of New York

BY:     *s/Mary Clare Kane*
MARY CLARE KANE
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5700
mary.kane@usdoj.gov

## VERIFICATION

**STATE OF NEW YORK   )**
**COUNTY OF ERIE        )        ss.:**
**CITY OF BUFFALO       )**

**JACOB WELSTED**, being duly sworn, deposes and says:

I am a Special Agent with the Internal Revenue Service-Criminal Investigation, Buffalo NY, and I am familiar with the facts and circumstances surrounding the seizure of the $61,183.58 United States currency seized from M&T Bank account number 9885311390 held in the name of Darrell Lowery, on or about May 3, 2024.  The facts alleged in the Complaint for Forfeiture are true to the best of my knowledge and belief and based upon my personal knowledge and information furnished to me by officers and agents of the IRS and provided to officials of the United States Department of Justice.

_s/Jacob Welsted_____
JACOB WELSTED
Special Agent
Internal Revenue Service-Criminal
Investigation

Sworn to before me this 27th day of
September, 2024.

_s/Gabriela Kick_____
Notary Public
**GABRIELA KICK**
Notary Public, State of New York
Qualified in Niagara County
My Commission Expires: 09/04/2026